COUNTY COMMISSIONERS — EMINENT DOMAIN The County Commissioners are vested with the authority to declare an area of land an airport hazard. Further, the County Commissioners may exercise the right of eminent domain to clear a hazardous area under the terms of 3 O.S. 65.2 [3-65.2](a) (1971). The terms of 3 O.S. 65.10 [3-65.10] (1971) expressly provide for the issuance of general obligation bonds to finance the acquisition or elimination of airport hazards. The Attorney General has considered your letter of February 19, 1973, wherein you advise of the following facts: "Tinker Air Force Base is in Oklahoma County, Oklahoma. The flight pattern of planes to and from said base is across an area of land in Midwest City, Oklahoma, which area has been determined by the United States Air Force as being hazardous. There are a number of houses and other buildings in said area that must be removed therefrom in order to meet federal requirements." Considering these facts, you ask the following questions: "1. Do the County Commissioners have the authority to declare an area of land in Midwest City an airport hazard? "2. Can the County Commissioners clear the area by condemnation ? "3. Providing the foregoing questions are answered in the affirmative may the cost of condemnation be financed by a general obligation bond issue?" In your first question you ask whether the County Commissioners may declare a tract of land lying in the approach pattern for Tinker Field an airport hazard. As recited in your brief statement of facts the questioned area contains both residential and commercial properties. "Airport hazard" is defined by the terms of 3 O.S. 65.1 [3-65.1](c) (1971), and reads: ". . . 'airport hazard' means any structure, object or natural growth, or use of land which obstructs the air space required for the flight of aircraft in landing or taking off at an airport or is otherwise hazardous to such landing or taking off of aircraft." Most assuredly the questioned area could be determined an airport hazard under the terms of Section 3 O.S. 65.1 [3-65.1](c) as it is a use of land which obstructs the air space required for the flight of aircraft. "Municipality" is defined by 3 O.S. 65.1 [3-65.1](d) (1971) as follows: "Municipality . . . The municipality means any county, city, or town of this State. 'Municipal' means pertaining to a municipality as herein defined." Under this broad definition the County Commissioners for Oklahoma County would be the body designate to decide and declare what constitutes an airport hazard. Title 19 O.S. 3 [19-3] (1971) provides that the powers of a county "shall be exercised by its board of county commissioners." The general powers of "municipalities" as heretofore defined, are delineated in 3 O.S. 65.2 [3-65.2] (1971), which reads in pertinent part "Every municipality is authorized, out of any appropriations or other monies made available for such purpose, to plan, establish, develop, construct, enlarge, improve, maintain, equip, operate, regulate, protect and police airports . . ." Consequently, the Board of County Commissioners, in consideration of the particular facts existing in and around Tinker Air Force Base, are authorized to determine whether an airport hazard does exist. Next, you ask whether the County Commissioners may exercise the right of eminent domain to clear a hazardous area. In this connection we again cite 3 O.S. 65.2 [3-65.2](a) (1971), which reads: "Every municipality is authorized, out of any appropriations or other monies made available for such purpose, to plan, establish, develop, construct, enlarge, improve, maintain, equip, operate, regulate, protect and police airports and air navigation facilities, either within or without the territorial limits of such municipality and within or without the territorial boundaries of this State, including the construction, installation, equipment, maintenance and operation at such airports of buildings and other facilities for the servicing of aircraft or for the comfort and accommodation of air travelers, and the purchase and sale of supplies, goods and commodities as an incident to the operation of its airport properties. For such purposes the municipality may use any available property that it may now or hereafter own or control and may, by purchase, gift, devise, lease, eminent domain proceedings or otherwise, acquire property, real or personal, or any interest therein including easements in airport hazards or land outside the boundaries of an airport or airport site as are necessary to permit safe and efficient operation of the airport or to permit the removal, elimination, obstruction-marking or obstruction lighting of airport hazards or to prevent the establishment of airport hazards." (Emphasis added) Clearly, the County Commissioners — for Oklahoma County under specific legislative grant of authority may initiate condemnation proceedings to clear the hazardous area. The general grant of authority extends to the development, improvement, and maintenance of airports and includes the power to operate, regulate and protect the use thereof. In order to achieve the enumerated purposes the County Commissioners are imbued with broad powers, including the exercise of eminent domain. In your third question you ask if the cost of condemnation may be financed by a general obligation bond issue. It is a basic rule of law that the power for a political subdivision of a state to issue bonds must be conferred by organic law or statute. ArticleX, Section 26 of the Oklahoma Constitution provides in part that: ". . . No county, city, town, township, school district . . . shall be allowed to become indebted, in any manner, or for any purpose, to an amount exceeding, in any year, the income and revenue provided for such year without the assent of three-fifths of the voters thereof . . ." Since Article X, Section 26 is not self-executing, the decisive issue as to whether bonds may be issued by a county pursuant to Section 26 authorization, is whether the Legislature of Oklahoma has specifically authorized the county to incur the indebtedness for such purpose. In the instant circumstance, this authorization is found at 3 O.S. 66.10 [3-66.10] (1971), which reads: "The cost of planning and acquiring, establishing, developing, constructing, enlarging, improving, or equipping, an airport or air navigation facility, or the site therefore, including buildings and other facilities incidental to the operation thereof, and the acquisition or elimination of airport hazards, may be paid for wholly or partly from the proceedings of the sale of bonds or notes of the municipality, as the governing body of the municipality shall determine. . . ." (Emphasis added) It is evident under the terms of Section 3 O.S. 65.10 [3-65.10] that the County Commissioners may issue general obligation bonds to finance the condemnation of an airport hazard, as it is a specifically authorized purpose for the issuance of bonds. It is, therefore, the opinion of the Attorney General that your first question be answered in the affirmative. The County Commissioners are vested with the authority to declare an area of land an airport hazard. Further, your second question may also be answered in the affirmative, as the County Commissioners may exercise the right of eminent domain to clear a hazardous area under the terms of 3 O.S. 65.2 [3-65.2](a) (1971). Your third question is also answered in the affirmative as the terms of 3 O.S. 65.10 [3-65.10] (1971) expressly provide for the issuance of general obligation bonds to finance the acquisition or elimination of airport hazards. (Michael D. Tinney)